# In the United States Court of Federal Claims

No. 13-71C
(Filed Under Seal: December 16, 2013)
(Reissued for Publication: January 6, 2014)*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| COASTAL ENVIRONMENTAL GROUP, | * | |
| INC., | * | Postaward Bid Protest; Cancellation of |
| | * | Procurement After Protest Filed; Motion to |
| Plaintiff, | * | Dismiss; Mootness; Motion for Leave to |
| | * | File an Amended Complaint; RCFC 15(a) |
| v. | * | Versus RCFC 15(d); Futility of |
| | * | Supplementation; Laches; Supplemental |
| THE UNITED STATES, | * | Complaint Permitted |
| | * | |
| Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Brian W. Craver, Washington, DC, for plaintiff.

Devin A. Wolak, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

This postaward bid protest concerns the award of a soil remediation contract. In its initial complaint, plaintiff contended that the contracting officer improperly awarded the contract to another bidder despite her beliefs that the awardee's bid was nonresponsive and that the awardee was not responsible. After plaintiff filed its protest, the government terminated the awardee's contract for its convenience and cancelled the procurement. Arguing that plaintiff's protest is now moot, defendant moves to dismiss plaintiff's complaint for lack of jurisdiction. Plaintiff opposes the dismissal of its complaint, asserting that the cancellation of the procurement did not divest the court of jurisdiction. Plaintiff also moves for leave to amend its complaint to challenge the government's cancellation decision. For the reasons set forth below, the court will permit plaintiff to amend its complaint, but dismisses as moot plaintiff's claim that the contracting officer improperly awarded the contract to another bidder.

---

 * This reissued Opinion and Order incorporates the agreed-to redaction proposed by the parties on January 2, 2014. The redaction is indicated with a bracketed ellipsis ("[. . .]").

## I. BACKGROUND

On March 29, 2012, the United States Environmental Protection Agency ("EPA") issued an invitation for bids ("IFB") to remediate the soil on as many as 2,600 residential properties in Omaha, Nebraska.[1] The EPA contemplated awarding a fixed-price, indefinite-quantity contract to the lowest bidder who was deemed to be responsible and who submitted a responsive bid. The base period of the contract was to be one year, followed by three one-year option periods. Bidders were required to submit, among other materials, resumes for key personnel that reflected the specific experience identified in the IFB. The EPA emphasized the importance of the experience and qualifications of key personnel, and declared that a bid that did not identify key personnel who had the requisite experience and qualifications would be deemed to be nonresponsive.

At least two companies submitted bids: plaintiff and PK Management Group, Inc. ("PK"). PK was the low bidder, with a total bid price of $23,897,255. Plaintiff, with a total bid price of [. . .], was the next lowest bidder. Upon reviewing PK's bid, however, the contracting officer concluded that PK did not meet the IFB's requirements because it lacked relevant experience, its subcontractors lacked relevant experience, and the resumes of its key personnel did not reflect the required experience. The contracting officer therefore found that PK was not a responsible bidder.

Because the contract was set aside for a small business, the contracting officer was required to refer the issue of PK's responsibility to the United States Small Business Administration ("SBA") for evaluation in the SBA's Certificate of Competency program. In the referral, the contracting officer did not address whether PK submitted a responsive bid. On June 22, 2012, the SBA issued a Certificate of Competency to PK and notified the EPA that it considered PK to be a responsible bidder. The SBA advised the EPA that the EPA was required to award the contract to PK. The contracting officer disagreed with the SBA's responsibility determination, and filed an appeal with the SBA. The contracting officer once again did not address whether PK submitted a responsive bid. The SBA denied the appeal, leading the contracting officer to award the contract to PK in September 2012.

Shortly thereafter, plaintiff protested the EPA's award decision at the Government Accountability Office ("GAO"), arguing that PK's bid was nonresponsive due to the nonconforming key personnel resumes and that the SBA was not legally permitted to make a responsibility determination if a bidder submitted a nonresponsive bid. PK's performance of the contract was stayed during the pendency of the GAO protest. The GAO ultimately denied the protest on January 14, 2013. Two weeks later, on January 29, 2013, plaintiff filed the instant protest, setting forth two counts in its complaint: (1) the EPA's award of the contract to a bidder

---

[1] The court derives the facts in this section from the initial complaint, the notices filed by defendant on March 3, 2013, and July 9, 2013, and the exhibit attached to defendant's initial motion to dismiss.

with a nonresponsive bid was arbitrary and capricious and (2) the SBA's determination that PK was a responsible bidder in the absence of any finding that PK submitted a responsive bid was arbitrary and capricious.  Plaintiff sought the following relief:  (1) an injunction forbidding further performance of the contract; (2) a declaration that the contract awarded to PK was null and void; (3) termination of the contract; (4) an injunction requiring the contract be awarded to plaintiff as the next lowest bidder; (5) attorney's fees and costs; and (6) any other relief deemed just and equitable.

During a January 30, 2013 status conference, defendant represented that the EPA would agree to stay PK's performance of the contract pending an expedited ruling from the court on the merits of plaintiff's protest.  Pursuant to the expedited briefing schedule, plaintiff filed a motion for judgment on the administrative record on February 22, 2013.  Then, on March 5, 2013, three days before its response and cross-motion were due, defendant filed a notice with the court indicating that the EPA intended to terminate its contract with PK for its convenience and conclude the procurement.[2]  Defendant further noted that the EPA would then reassess its needs for the soil remediation work that was the subject of the procurement.  Based on these representations, defendant stated that it intended to move to dismiss the protest as moot.

The EPA terminated its contract with PK on March 11, 2013.  That same day, defendant moved to dismiss this protest as moot pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC").  Plaintiff opposed the motion.  On July 9, 2013, after briefing had concluded, defendant filed another notice with the court indicating that because federal government sequestration had decimated the EPA's budget and forced it to furlough its employees, the EPA decided to satisfy its remediation needs through existing contracts.  As a result, defendant stated, the EPA would change the scope of the work that was the subject of the procurement at issue in this protest from remediation to the securing of property access agreements.  The new contract, worth $800,000, would be set aside for a small business.

Upon receiving defendant's notice, the court directed the parties to file supplemental briefs addressing what effect, if any, the information contained in the notice had on the positions they advanced in their briefing on defendant's motion to dismiss.  Rather than filing a supplemental brief, defendant filed a renewed motion to dismiss.  Shortly after the conclusion of briefing on the renewed motion to dismiss, proceedings in the protest were stayed for twenty-

---

[2]  In one of its briefs, defendant provides an explanation for the EPA's decision to terminate its contract with PK.  However, the court cannot accept an attorney's contentions in argument as fact.  See Enzo Biochem, Inc. v. Gen-Probe, Inc., 424 F.3d 1276, 1284 (Fed. Cir. 2005) ("Attorney argument is no substitute for evidence."); Mel Williamson, Inc. v. United States, 229 Ct. Cl. 846, 848 (1982) ("Argument is not fact."); Del., Lackawanna & W. R.R. Co. v. United States, 54 Ct. Cl. 35, 41-42 (1919) ("The court can not accept asseverations of counsel, as to facts, made in argument, whether denied or conceded by the other side at the bar, without any stipulation duly filed or other evidence . . . .").

three days at defendant's request.[3]  Subsequently, pursuant to a schedule proposed by the parties, plaintiff moved for leave to file an amended complaint on November 4, 2013.  The parties have completed briefing on plaintiff's motion, and, finding oral argument unnecessary, the court is prepared to rule.

## II.  DISCUSSION

### A.  Defendant's Motions to Dismiss

As previously noted, defendant has filed both a motion to dismiss and a renewed motion to dismiss, arguing in both that plaintiff's protest has been mooted by the EPA's cancellation of the procurement that was the subject of the protest.  In both motions, defendant seeks dismissal of plaintiff's complaint pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction.

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  Powell v. McCormack, 395 U.S. 486, 496 (1969).  When a case is moot, there are no justiciable issues upon which the court can render a decision.[4]  Flast v. Cohen, 392 U.S. 83, 95 (1968); see also Fisher v. United States, 402 F.3d 1167, 1176

---

[3]  Defendant requested the stay due to the lapse of appropriations to the United States Department of Justice.  Although the lapse commenced on October 1, 2013, defendant did not move to stay proceedings until October 7, 2013.  The court lifted the stay on October 29, 2013.

[4]  The "lack of jurisdiction to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy."  Liner v. Jafco, Inc., 375 U.S. 301, 306 n.3 (1964); see also U.S. Const. art. III, § 2 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties . . . [and] to Controversies to which the United States shall be a Party . . . .").  But see Honig v. Doe, 484 U.S. 305, 329-32 (1988) (Rehnquist, C.J., concurring) (questioning the constitutional origins of the mootness doctrine by arguing that despite federal courts' recognition of exceptions to mootness, such exceptions cannot be read into Article III's "case or controversy" requirement); Matthew I. Hall, The Partially Prudential Doctrine of Mootness, 77 Geo. Wash. L. Rev. 562, 575 (2009) (arguing "that if the mootness bar were truly a mandatory, jurisdictional rule imposed by the Constitution, then the exceptions . . . could not exist").  The United States Court of Federal Claims ("Court of Federal Claims"), as a court established under Article I of the United States Constitution, 28 U.S.C. § 171(a) (2012), is not bound by the "case or controversy" requirement of Article III, Zevalkink v. Brown, 102 F.3d 1236, 1243 (Fed. Cir. 1996).  Nevertheless, the Court of Federal Claims and other Article I courts traditionally have applied the "case or controversy" justiciability doctrines.  See id.; Anderson v. United States, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003); CW Gov't Travel, Inc. v. United States, 46 Fed. Cl. 554, 558 (2000); cf. 28 U.S.C. § 2519 (using the phrase "case or controversy" in describing the finality of judgments of the Court of Federal Claims).

(Fed. Cir. 2005) (panel portion) (noting that justiciability "encompasses a number of doctrines under which courts will decline to hear and decide a cause," including the "doctrines of standing, mootness, ripeness, and political question").  The court's inquiry into the justiciability of a case is distinct from its inquiry into whether it has jurisdiction over the case's subject matter.  Powell, 395 U.S. at 512; Baker v. Carr, 369 U.S. 186, 198 (1962); Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1335 n.3 (Fed. Cir. 2008); Murphy v. United States, 993 F.2d 871, 872 (Fed. Cir. 1993).  In other words, the court may find that it possesses jurisdiction over the subject matter of a case but that the dispute is nevertheless nonjusticiable.  Thus, while mootness is jurisdictional in that it involves the court's power to adjudicate a case,[5] an RCFC 12(b)(1) motion may not be the appropriate vehicle by which to dismiss a case as moot.[6]

Regardless of whether a moot claim should be dismissed for lack of subject matter jurisdiction or for failure to state a claim upon which the court could grant relief, the standard applied by the court in reviewing a motion urging dismissal of a claim as moot is the same:  the court assumes that the allegations in the complaint are true and construes those allegations in the plaintiff's favor.  Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995).

---

[5]  See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102-10 (1988) (characterizing the justiciability issue of standing as a jurisdictional issue); North Carolina v. Rice, 404 U.S. 244, 246 (1971) (per curiam) ("Mootness is a jurisdictional question because the Court is not empowered to decide moot questions or abstract propositions . . . ." (internal quotation marks omitted)); Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002) ("[M]ootness . . . is a threshold jurisdictional issue."); CBY Design Builders v. United States, 105 Fed. Cl. 303, 328 (2012) ("The mootness of a case is properly the subject of an RCFC 12(b)(1) motion.").

[6]  See, e.g., Baker, 369 U.S. at 196 (holding that a court's determination that a case that is "unsuited to judicial inquiry or adjustment" should be dismissed for "a failure to state a justiciable cause of action" and not for "a lack of jurisdiction of the subject matter" (internal quotation marks omitted)); Oryszak v. Sullivan, 576 F.3d 522, 526-27 (D.C. Cir. 2009) (Ginsburg, J., concurring) (noting that when "a plaintiff makes a claim that is not justiciable . . . a court should dismiss the case for failure to state a claim" and that "it is important to distinguish among failure to state a claim, a claim that is not justiciable, and a claim over which the court lacks subject matter jurisdiction"); F. Alderete Gen. Contractors, Inc. v. United States, 715 F.2d 1476, 1480 (Fed. Cir. 1983) (reciting "the long-standing rule in the Federal courts that jurisdiction is determined at the time the suit is filed and, after vesting, cannot be ousted by subsequent events, including action by the parties" (emphasis added)); see also Kontrick v. Ryan, 540 U.S. 443, 455 (2004) ("Clarity would be facilitated if courts and litigants used the label 'jurisdictional' . . . only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority.").

## 1. Mootness

The sole basis for defendant's motions to dismiss is its contention that plaintiff's protest is moot. A court "will determine only actual matters in controversy essential to the decision of the particular case before it." United States v. Alaska S.S. Co., 253 U.S. 113, 115 (1920). "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240-41 (1937). Moreover, the controversy must exist at all stages of the litigation; it is not enough that the controversy was alive when the complaint was filed. Steffel v. Thompson, 415 U.S. 452, 459 n.10 (1974). Because the "[m]ootness of an action relates to the basic dispute between the parties" and "not merely the relief requested," a case will not be rendered moot by subsequent acts if some of the requested relief remains available. Intrepid v. Pollock, 907 F.2d 1125, 1131 (Fed. Cir. 1990); accord Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992) (holding that a case is not moot so long as the "court can fashion some form of meaningful relief" for the injured party). And, even when subsequent acts render a case completely moot, courts will allow the case to proceed under certain circumstances. For example, an otherwise moot case will not be dismissed upon the voluntary cessation of the challenged activity unless there is no reasonable expectation that the activity will recur and the effects of the activity have been completely extinguished. Cnty. of L.A. v. Davis, 440 U.S. 625, 631 (1979).

## 2. The Claims in Plaintiff's Complaint Are Moot

As noted above, in its complaint, plaintiff protested the EPA's award of the soil remediation contract to PK. It therefore sought a court order preventing contract performance, declaring the contract void, terminating the contract, and requiring the EPA to award it the contract. The EPA's subsequent termination of the contract and cancellation of the procurement, however, renders the court unable to award plaintiff's requested relief. Because the EPA has already terminated its contract with PK, the court is unable to stay performance of the contract or terminate the contract, and a declaration that the contract was void would be meaningless. And, because the EPA has cancelled the procurement altogether, the court–even if it had the authority to do so–could not award the contract to plaintiff as a result of any improprieties in the EPA's award of the contract to PK. In short, the actions taken by the EPA after plaintiff filed its protest rendered moot plaintiff's challenge of the contract award.

The court's conclusion is not without precedent; the Court of Federal Claims has consistently found that the cancellation of a procurement renders a protest of that procurement moot. In CCL Service Corp. v. United States, the protestor filed suit challenging the Defense Information Systems Agency's award of seven contracts to another company, and seeking appropriate declaratory and injunctive relief. 43 Fed. Cl. 680, 681 (1999). After the protest was filed, the agency terminated the seven contracts for its convenience and cancelled the solicitation. Id. at 684, 686. The court held that the protestor's claims for equitable relief were "definitely moot in light of the cancellation of the contracts[.]" Id. at 690 (citing Durable Metals Prods., Inc. v. United States, 27 Fed. Cl. 472, 477 (1993)).

The court arrived at the same conclusion in <u>Lion Raisins, Inc. v. United States</u>, 69 Fed. Cl. 32 (2005).  In that case, after the protestor had submitted bids in response to several invitations to bid, the United States Department of Agriculture suspended it from bidding on government contracts for one year.  <u>Id.</u> at 33.  The protestor filed suit challenging the suspension, and the court issued an order preventing the agency from awarding the contracts.  <u>Id.</u>  During the pendency of the suit, the agency cancelled the relevant solicitations.  <u>Id.</u>  The court held that "since the contract solicitations were cancelled, Plaintiff can no longer complain that the contracts at issue were improperly awarded . . . , because the contracts were not awarded to any bidder."  <u>Id.</u> at 34.

Plaintiff attempts to rescue its complaint from dismissal by asserting that the court possesses continuing jurisdiction to entertain its protest and consider the propriety of the EPA's cancellation of the soil remediation procurement.  In advancing this argument, plaintiff asserts that the court cannot dismiss its complaint so long as it remains possible for plaintiff to file an amended complaint containing a viable claim.  Plaintiff misstates the standard of review.  The court's focus must be on the complaint actually before it, and not on the possible contents of a not-yet-filed amended complaint.  The allegations in plaintiff's complaint relate only to the propriety of the EPA's award of the contract to PK.  Plaintiff's complaint does not contain any allegations concerning the EPA's cancellation of the soil remediation procurement.[7]  The court therefore lacks the ability to consider such allegations.[8]

Plaintiff further claims that its request for attorney's fees and costs permits the court to retain jurisdiction over its complaint.  Plaintiff's contention is contrary to law.  In <u>Lewis v. Continental Bank Corp.</u>, the United States Supreme Court ("Supreme Court") expressly held that "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim."  494 U.S. 472, 480 (1990) (citation omitted).  And, the Court of Federal Claims has held that "[l]egal fees in relation to filing a bid protest action are . . . bid protest costs," and "because the court does not have jurisdiction over bid protest costs, the court cannot assert jurisdiction over plaintiffs' claim for attorney's fees in relation to the bid protest."  <u>S.K.J. & Assocs., Inc. v. United States</u>, 67 Fed. Cl. 218, 231 (2005).  Thus, plaintiff's claim for attorney's fees cannot provide an avenue for the court to exercise jurisdiction over plaintiff's otherwise moot protest.

_____

[7]  In their briefs, the parties address both (1) whether the court has jurisdiction to entertain cancellation claims and (2) the merits of plaintiff's proposed challenge to the EPA's cancellation of the soil remediation procurement.  However, neither issue is relevant to whether the court can entertain plaintiff's initial complaint.

[8]  Indeed, recognizing that its complaint is deficient in this regard, plaintiff seeks leave to file an amended complaint to set forth a claim challenging the cancellation of the procurement. That motion is addressed below.

In sum, the EPA's termination of its contract with PK and subsequent cancellation of the procurement renders plaintiff's challenge to the award of the contract to PK moot.

### B. Plaintiff's Motion for Leave to Amend Its Complaint

In an attempt to avoid the complete dismissal of its protest, plaintiff moves for leave to amend its complaint to challenge the government's cancellation of the soil remediation procurement. Plaintiff premises its motion on RCFC 15(a). However, because plaintiff seeks to amend its complaint to set out events that occurred after it filed its protest, the proper basis for its motion is RCFC 15(d). See Prasco, LLC, 537 F.3d at 1337 & n.5. That rule provides:

> Supplemental Pleadings. On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

RCFC 15(d).

The ability of a plaintiff to use a supplemental complaint to cure a jurisdictional defect in an earlier-filed complaint is well settled by binding precedent. In Mathews v. Diaz, the Supreme Court held that a plaintiff who did not satisfy a "nonwaivable condition of jurisdiction" until after he filed suit could have cured the jurisdictional defect of his original complaint by filing a supplemental complaint. 426 U.S. 67, 75 (1976). The United States Court of Appeals for the Federal Circuit ("Federal Circuit") noted that the Mathews decision was "consistent with others holding that defects in a plaintiff's case–even jurisdictional defects–can be cured while the case is pending if the plaintiff obtains leave to file a supplemental pleading under Rule 15(d) reciting post-filing events that have remedied this defect." Black v. Sec'y of HHS, 93 F.3d 781, 790 (Fed. Cir. 1996). Whether a supplemental complaint could cure a defect, the Federal Circuit explained, depended on whether the substantive provision providing the trial court with subject matter jurisdiction expressly prohibited the filing of a complaint before a specified waiting period or before the exhaustion of administrative remedies. Id. It concluded that in the absence of such a provision, and so long as a plaintiff has satisfied the jurisdictional requirements within the relevant limitations period, a complaint may be supplemented to cure the original jurisdictional defect.[9] Id. at 791-92.

---

[9] This rule was applied in Central Pines Land Co. v. United States, 99 Fed. Cl. 394 (2011). In that case, the plaintiff filed a Fifth Amendment takings suit in the Court of Federal Claims after it filed a quiet title action in federal district court; both suits related to the same mineral rights. Id. at 396. Facing dismissal of its complaint for lack of jurisdiction pursuant to 28 U.S.C. § 1500, the plaintiff argued that its de facto supplemental complaint cured the jurisdictional defect. Id. at 402-03. The court, relying on dicta in Black, held that 28 U.S.C.

Applying <u>Mathews</u> and <u>Black</u> to this case, it appears that plaintiff is not legally barred from curing, with a supplemental complaint, the jurisdictional defect arising from the cancellation of the procurement that was the subject of its protest.  There are no waiting periods or administrative exhaustion requirements for bid protests.  <u>See</u> 28 U.S.C. § 1491(b) (describing the bid protest jurisdiction of the Court of Federal Claims).  Nor has the statute of limitations for plaintiff's supplemental allegations expired.  <u>See id.</u> §§ 2401 (providing a six-year limitations period for civil actions filed against the United States), 2501 (providing a six-year limitations period for suits filed in the Court of Federal Claims).  And, there is precedent in support of the court's ability to entertain protests challenging an agency's decision to cancel a procurement.  <u>See, e.g.</u>, <u>MORI Assocs., Inc. v. United States</u>, 102 Fed. Cl. 503, 519-25 (2011); <u>Def. Tech., Inc. v. United States</u>, 99 Fed. Cl. 103, 114-15 (2011); <u>Madison Servs., Inc. v. United States</u>, 90 Fed. Cl. 673 (2009); <u>FFTF Restoration Co. v. United States</u>, 86 Fed. Cl. 226, 236-45 (2009); <u>see also</u> <u>Croman Corp. v. United States</u>, 724 F.3d 1357, 1363-65 (Fed. Cir. 2013) (reviewing, without commenting on jurisdiction, a protestor's contention that an agency improperly cancelled a portion of a solicitation).

In fact, the procedural posture of this protest is quite similar to the posture of the protest in <u>Madison Services, Inc.</u>  In that case, the protestor sought to prevent the Federal Emergency Management Agency from reissuing a solicitation for which it was the intended awardee.  90 Fed. Cl. at 676.  It set forth three claims for relief in its complaint.  <u>Id.</u> at 677.  Upon the agency's formal cancellation of the solicitation at issue, the government moved to dismiss the protest as moot.  <u>Id.</u>  The protestor immediately sought leave to file an amended complaint challenging the cancellation decision and setting forth three additional claims for relief pertaining to that challenge.  <u>Id.</u>  The court concluded that, to the extent that the agency's cancellation of the solicitation was proper, the protest would be rendered moot.  <u>Id.</u> at 680.  However, it also concluded that plaintiff should be allowed to supplement its complaint with the cancellation-related allegations so that the court would be presented with a justiciable controversy.  <u>Id.</u> at 682.  Thus, it allowed the protestor to file the proposed supplemental complaint, but dismissed the three claims for relief that originally appeared in the initial complaint.  <u>Id.</u> at 683.

Notwithstanding the above precedent, defendant argues that the court should not permit plaintiff to file a supplemental complaint because supplementation would be futile.[10] Specifically, defendant contends that plaintiff's proposed supplemental complaint is barred by

---

§ 1500 was "the type of statute containing an 'express prohibition' on jurisdiction such that a court's jurisdiction may not be 'rescue[d]' by a supplemental pleading."  <u>Id.</u> at 404 (quoting <u>Black</u>, 93 F.3d at 790).

[10]  Defendant actually argues that the filing of an amended complaint would be futile.  However, because plaintiff's motion for leave to amend its complaint should have been brought under RCFC 15(d), the court characterizes defendant's argument as an argument against supplementation.

laches, and that a successful challenge to the EPA's cancellation decision would merely return the parties to the status quo ante, requiring the court to address plaintiff's original, moot protest. The court addresses each argument in turn.

**1.  Defendant Has Not Met Its Burden to Invoke Laches**

Laches is "the neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar." A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1028-29 (Fed. Cir. 1992) (en banc).  To invoke the affirmative defense of laches, a defendant bears the burden of demonstrating that "the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant" and that "the delay operated to the prejudice or injury of the defendant." Id. at 1032.  In analyzing whether a defendant has met its burden, "[a] court must look at all of the particular facts and circumstances of [the] case and weigh the equities of the parties." Id.; accord Cornetta v. United States, 851 F.2d 1372, 1379-80 (Fed. Cir. 1988) (en banc).  At bottom, the application of laches is within the discretion of the trial court. A.C. Aukerman Co., 960 F.2d at 1032, 1036.

Laches may be invoked in bid protests filed in the Court of Federal Claims.  See Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1314-15 (Fed. Cir. 2007).  However, the court infrequently applies the doctrine.  See Aircraft Charter Solutions, Inc. v. United States, 109 Fed. Cl. 398, 408 (2013) (citing CW Gov't Travel, Inc. v. United States, 61 Fed. Cl. 559, 569 (2004)). Rather, the consequences of a plaintiff's delay in filing a bid protest manifest in multiple ways:

> In some cases, delay constitutes waiver by the plaintiff of a bid protest claim.  In others, delay by the plaintiff in filing a bid protest affects the court's weighing of injunctive relief factors.  In a few cases, where delay is of an unacceptable magnitude, the doctrine of laches may bar a bid protest.

Id. (citations omitted).  Defendant asserts that this case presents an ideal case for applying the laches defense.  While defendant may ultimately be correct, it has not established laches at this time.

To establish that laches bars plaintiff's proposed supplemental complaint, defendant must prove both (1) an unreasonable and inexcusable delay and (2) prejudice caused by that delay. With respect to the latter element, defendant contends that if plaintiff was successful in challenging the EPA's cancellation decision, the EPA could be forced to change course from its current plan to use existing contracts in conjunction with a contract to secure property access agreements back to awarding the contract contemplated in the original IFB.  Due to the length of time that has passed, defendant argues, the EPA "would be severely prejudiced if it completed the tasks [under its current plan that] it would have sought under the base-period of the contract that [plaintiff] seeks, then had to pay for these now-unnecessary services again, at a significant

and, in the current budgetary climate, unaffordable premium." Def.'s Resp. Mot. Amend 11. This argument is insufficient to establish prejudice. Although defendant avers that the EPA "has been moving forward" with its new plan to procure the soil remediation services at issue and that a contract awarded under the original IFB would be "unaffordable" in "the current budgetary climate," id., it has offered no evidence to support these contentions. Averments made within a legal argument cannot be used to satisfy an evidentiary burden–in this case, that defendant was prejudiced by plaintiff's purported delay in seeking to file a supplemental complaint. See Enzo Biochem, Inc, 424 F.3d at 1284; Mel Williamson, Inc., 229 Ct. Cl. at 848; Del., Lackawanna & W. R.R. Co., 54 Ct. Cl. at 41-42. In the absence of evidence that defendant has incurred costs that it would not have incurred but-for the purported delay and that the EPA could not afford to award a contract under the original IFB, defendant's claim of prejudice is merely speculative. And, because defendant cannot demonstrate prejudice, it cannot establish that plaintiff's proposed supplemental complaint would be barred by laches,[11] defeating its argument that laches would render supplementation futile.

### 2. Defendant Has Misstated the Effect of a Successful Challenge to the EPA's Cancellation Decision

Defendant also argues that supplementation of plaintiff's complaint would be futile because if plaintiff succeeded in its challenge to the EPA's cancellation decision, the case would revert to the original, now moot, protest filed by plaintiff. Defendant is incorrect. If plaintiff prevailed in its challenge to the EPA's cancellation decision, and if, as plaintiff requests, the court issued an injunction requiring the EPA to award a contract under the original IFB, plaintiff's original protest arguments concerning the award of the contract to PK would be irrelevant because the EPA has terminated its contract with PK. Plaintiff does not, for obvious reasons, seek to challenge the EPA's termination of its contract with PK; plaintiff's challenge is directed at the EPA's subsequent and distinct decision to cancel the procurement in lieu of awarding a new contract under the original IFB. Thus, the court would not need to revisit the EPA's decision to award the contract to PK. Defendant's second futility argument, therefore, lacks merit.

### 3. Plaintiff May File a Supplemental Complaint

Defendant has not established that plaintiff should be precluded from filing a supplemental complaint. Moreover, it bears noting that if the court denied plaintiff's motion for leave to amend its complaint and dismissed its protest as moot, there would be nothing preventing plaintiff from filing a new protest challenging the EPA's decision to cancel the soil

---

[11] This conclusion does not foreclose defendant from reasserting a laches defense upon the filing of a supplemental complaint if it can produce the necessary evidence to satisfy its burden. In fact, based on the contents of the parties' briefs, it appears that defendant's contentions regarding plaintiff's delay in asserting its cancellation-related claims may be meritorious, if substantiated by appropriate evidence.

remediation procurement.  As with any other protest, defendant would then be required to produce an administrative record pertaining to the EPA's decision, see RCFC App. C, ¶¶ 21-23, after which it could move to dismiss the protest or request judgment on the administrative record, see id. ¶ 8.  Thus, in the absence of any showing that the filing of a supplemental complaint would be futile, it makes little sense not to permit the supplementation.  See Black, 93 F.3d 791-92 (noting that "there would be no more than a formal distinction between filing a supplemental pleading and filing a new petition with the additional . . . allegations included); Madison Servs., Inc., 90 Fed. Cl. at 683 ("If the court were to deny plaintiff's motion to amend (or, rather, to supplement) its complaint, forcing plaintiff to file a new petition, nothing would be gained save the court's collection of a new filing fee.  To paraphrase the Supreme Court, it is far too late in the day, and entirely contrary to the spirit of the rules of the court and to longstanding principles, for decisions on the merits to be avoided or delayed on the basis of such mere technicalities.").  In sum, the court will permit plaintiff to supplement its complaint pursuant to RCFC 15(d).

## III.  CONCLUSION

As set forth above, the court **GRANTS** plaintiff's motion for leave to file an amended complaint.  Further, the court **GRANTS** both of defendant's motions to dismiss and **DISMISSES** plaintiff's original protest, i.e., counts one and two of plaintiff's original and proposed amended complaints, as **MOOT**.

Plaintiff shall file its proposed amended complaint, which the court deems to be a supplemental complaint, **no later than Monday, January 6, 2014**.  The court will then contact the parties to schedule a status conference to discuss a schedule for further proceedings.

The court has filed this ruling under seal.  The parties shall confer to determine agreed-to proposed redactions.  Then, by **no later than Monday, January 6, 2014**, the parties shall file a joint status report indicating their agreement with the proposed redactions, **attaching a copy of those pages of the court's ruling containing proposed redactions, with all proposed redactions clearly indicated.**

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge